**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| REBECCA DRAGONE,<br><br>Plaintiff,<br><br>v.<br><br>REGIONAL WOMEN'S HEALTH GROUP, LLC d/b/a SOUTH JERSEY FERTILITY CENTER OF MARLTON and d/b/a AXIA WOMEN'S HEALTH; ALICE SWOYER; JESSICA DIAMOND; SHARYN PERTNOY-SCHMIDT; TAMMY SELWOOD; LAUREN WEISSMANN; KATY LAPALOMENTO; and JOHN/JANE DOES 1–10,<br><br>Defendants. | Civil Action No.: ____________<br><br>**NOTICE AND PETITION FOR REMOVAL OF CASE FROM THE SUPERIOR COURT OF NEW JERSEY, LAW DIVISION, BURLINGTON COUNTY** |

TO: PAUL S. GROSSWALD, ESQ., LLC
Paul S. Grosswald, Esq.
98 W. End Avenue
Summit, New Jersey 07901
pgrosswald@hotmail.com
Attorneys for Plaintiff

Clerk, Superior Court of New Jersey
Burlington County Courts Facility
49 Rancocas Road
Mount Holly, New Jersey 08060

Defendant Sharyn Pertnoy-Schmidt ("Pertnoy-Schmidt"), by and through her undersigned counsel, together with Defendants Regional Women's Health Group, LLC, Alice Swoyer, Lauren Weissmann, Katy LaPalomento, and Tammy Selwood (collectively with Pertnoy-Schmidt, the "Removing Defendants"), by and through their undersigned counsel, hereby file this Notice of Removal of the above-captioned action to the United States District Court for the District of New Jersey, from the Superior Court of New Jersey, Law Division, Burlington County, as provided by Title 28, United States Code, Chapter 89. The Removing Defendants state as follows:

1. Plaintiff Rebecca Dragone ("Plaintiff") commenced this action by filing a Complaint in the Superior Court of New Jersey, Law Division, Burlington County, captioned Rebecca Dragone v. Regional Women's Health Group, LLC d/b/a South Jersey Fertility Center of Marlton and d/b/a Axia Women's Health, et al., bearing Docket No. BUR-L-2052-26 (the "State Court Action"). On September 1, 2026, Plaintiff filed a First Amended Complaint and Jury Demand (the "Complaint"). True and correct copies of all process, pleadings, and orders served upon the Removing Defendants in the State Court Action are attached hereto as **Exhibit A**.

2. Defendants Regional Women's Health Group, LLC, Alice Swoyer, Lauren Weissmann, and Katy LaPalomento were served with the Complaint on September 3, 2026.

3. Defendant Pertnoy-Schmidt was served with the Summons and Complaint on November 8, 2026, by acknowledgment of service executed by her counsel. Pertnoy-Schmidt is a later-served defendant within the meaning of 28 U.S.C. § 1446(b)(2)(B)–(C). This Notice of Removal is therefore timely filed within thirty (30) days of service upon Pertnoy-Schmidt, as required by 28 U.S.C. § 1446(b)(2)(B). Pursuant to 28 U.S.C. § 1446(b)(2)(C), each earlier-served defendant, namely Regional Women's Health Group, LLC, Alice Swoyer, Lauren Weissmann, and Katy LaPalomento, consents to and joins in this removal.

4. On or about November 16, 2026, counsel for Defendant Regional Women's Health Group, LLC, Alice Swoyer, Lauren Weissmann, and Katy LaPalomento, accepted service on behalf of Defendant Tammy Selwood.

5. As of the date of this Notice, Defendant Jessica Diamond ("Diamond") has not been served with the Summons and Complaint. Under 28 U.S.C. § 1446(b)(2)(A), only defendants who have been "properly joined and served" must join in or consent to removal; the consent of Diamond

is therefore not required. Upon information and belief, Diamond has not appeared in the State Court Action and is not represented by counsel for any of the Removing Defendants.

6. All defendants who have been properly joined, and served, consent to and join in the removal of this action, as evidenced by the signatures of their respective counsel below. 28 U.S.C. § 1446(b)(2)(A). The fictitiously named John/Jane Does 1–10 have not been identified or served, and their consent is not required.

7. No substantive proceedings have taken place in the State Court Action. The Removing Defendants have not filed an answer or other responsive pleading to the Complaint, nor made any argument before the Superior Court of New Jersey.

8. As set forth in the Complaint, Plaintiff is a resident of the State of New Jersey, residing in Marlton, Burlington County, New Jersey. See Exhibit A at ¶ 1.

9. Plaintiff's eleven (11) Count Complaint sets forth the following causes of action: (1) disability discrimination and failure to accommodate under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("NJLAD"); (2) retaliation under the NJLAD; (3) aiding and abetting under the NJLAD; (4) violation of the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq.; (5) common-law wrongful discharge in violation of public policy; (6) interference under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"); (7) retaliation under the FMLA; (8) interference under the New Jersey Family Leave Act, N.J.S.A. 34:11B-1 et seq. ("NJFLA"); (9) retaliation under the NJFLA; (10) interference with and denial of rights under the New Jersey Earned Sick Leave Law, N.J.S.A. 34:11D-1 et seq. ("NJESLL"); and (11) retaliation under the NJESLL.

10. Specifically, in Counts Six and Seven, Plaintiff alleges that Defendant Regional Women's Health Group, LLC interfered with her exercise of FMLA rights in violation of 29

U.S.C. § 2615(a)(1), and retaliated against her for exercising FMLA rights in violation of 29 U.S.C. § 2615(a)(2). See Exhibit A at ¶¶ 86–96.

11. This Court has original jurisdiction over Plaintiff's FMLA claims pursuant to 28 U.S.C. § 1331 because those claims arise under the laws of the United States. See also 29 U.S.C. § 2617(a)(2) (authorizing an action under the FMLA to be maintained "in any Federal or State court of competent jurisdiction"). Plaintiff herself acknowledges that her claims include "federal claims." See Exhibit A at ¶ 11. Accordingly, this action may be removed pursuant to 28 U.S.C. § 1441(a).

12. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's remaining state-law claims (Counts One through Five and Eight through Eleven) because they are so related to the FMLA claims that they form part of the same case or controversy under Article III of the United States Constitution. See Lyon v. Whisman, 45 F.3d 758, 760 (3d Cir. 1995) (citing United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966)). All of Plaintiff's claims derive from a common nucleus of operative facts: Plaintiff's 2025 family leave to care for her mother, the attendance scrutiny related to that leave, the non-renewal of her accommodation, her alleged complaints, and her alleged constructive discharge on or about September 2, 2025. See Exhibit A at ¶¶ 14–47. Indeed, Plaintiff's NJFLA claims are premised on the very same leave and alleged conduct as her FMLA claims. Compare id. at ¶¶ 86–96, with id. at ¶¶ 97–106. Plaintiff would ordinarily be expected to try all of these claims in one judicial proceeding.

13. Therefore, Plaintiff's Complaint is properly removed to this Court based on federal-question jurisdiction, pursuant to 28 U.S.C. §§ 1331, 1367(a), and 1441(a).

14. The Removing Defendants submit this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff, including Plaintiff's failure to state any claim upon which relief may be granted.

15. Pursuant to 28 U.S.C. § 1441(a), venue properly lies in this District Court because the State Court Action was filed in Burlington County, New Jersey, which is embraced within the District of New Jersey, and the action arose at the Marlton, New Jersey practice of Defendant Regional Women's Health Group, LLC. Pursuant to L. Civ. R. 40.1(a), this matter should be assigned to the Camden vicinage.

16. Pursuant to 28 U.S.C. § 1446(d), the Removing Defendants have given written notice of the removal of this action to all adverse parties and have filed a copy of this Notice with the Clerk of the Superior Court of New Jersey, Law Division, Burlington County.

WHEREFORE, the Removing Defendants respectfully request that this action be removed to the United States District Court for the District of New Jersey.

Respectfully submitted,
**GREENBAUM, ROWE, SMITH & DAVIS LLP**
99 Wood Avenue South
Iselin, New Jersey 08830
(732) 476-2502

By: /s/ Jemi G. Lucey
Jemi G. Lucey, Esq.
Attorneys for Defendant Sharyn Pertnoy-Schmidt

Dated: November 19, 2026

**CONSENTED TO AND JOINED IN BY:**

**JACKSON LEWIS P.C.**
200 Connell Drive, Suite 2000
Berkeley Heights, New Jersey 07922
(908) 795-5200

By: /s/ Robert J. Cino
Robert J. Cino, Esq.

Joann F. Sexton, Esq.

Attorneys for Defendants Regional Women's Health Group, LLC, Alice Swoyer, Lauren Weissmann, Katy Lapalomento and Tammy Selwood

Dated: November 19, 2026

# EXHIBIT A

**PAUL S. GROSSWALD, ESQ., LLC**
Paul S. Grosswald (Attorney ID #: 04031-2001)
98 W. End Avenue
Summit, NJ 07901
Phone: (718) 694-9442
Email: pgrosswald@hotmail.com
*Attorneys for Plaintiff Rebecca Dragone*

**SUPERIOR COURT OF NEW JERSEY**
**LAW DIVISION: BURLINGTON COUNTY**

**DOCKET NO.: BUR-L-2052-26**

**Civil Action**

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

REBECCA DRAGONE,

Plaintiff,

v.

REGIONAL WOMEN'S HEALTH GROUP, LLC d/b/a SOUTH JERSEY FERTILITY CENTER OF MARLTON and d/b/a AXIA WOMENS HEALTH; ALICE SWOYER; JESSICA DIAMOND; SHARYN PERTNOY-SCHMIDT; TAMMY SELWOOD; LAUREN WEISSMANN; KATY LAPALOMENTO; and JOHN/JANE DOES 1–10,

Defendants.

Plaintiff Rebecca Dragone ("Plaintiff"), by and through undersigned counsel, complains against Defendants Regional Womens Health Group, LLC d/b/a South Jersey Fertility Center of Marlton and d/b/a Axia Women's Health ("Regional Womens Health" or "Employer"), Alice Swoyer ("Defendant Swoyer" or "Swoyer"), Jessica Diamond ("Defendant Diamond" or "Diamond"), Sharyn Pertnoy-Schmidt ("Defendant Pertnoy-Schmidt" or "Pertnoy-Schmidt"), Tammy Selwood ("Defendant Selwood" or "Selwood"), Lauren Weissmann ("Defendant Weissmann" or "Weissmann"), Katy LaPalomento ("Defendant LaPalomento" or "LaPalomento"), and John/Jane Does 1–10 (collectively, "Defendants"), and alleges as follows:

## PARTIES

1. Plaintiff Rebecca Dragone is an adult individual residing in Marlton, Burlington County, New Jersey.

2. At all relevant times, Plaintiff was employed by Regional Womens Health as a medical assistant at or in connection with its Marlton, New Jersey fertility practice, commonly known as South Jersey Fertility Center of Marlton and/or Axia Women's Health.

3. Defendant Regional Womens Health is, upon information and belief, a business entity doing business in New Jersey under the names South Jersey Fertility Center of Marlton and Axia Women's Health, and was Plaintiff's employer within the meaning of the statutes pleaded below to the extent each statute applies.

4. Defendant Swoyer was Plaintiff's supervisor and exercised authority over Plaintiff's assignments, attendance issues, accommodations, and/or other terms and conditions of employment.

5. Defendant Diamond was a lead medical assistant and supervisor who prepared or participated in preparing work schedules and assignments for medical assistants, including Plaintiff.

6. Defendant Pertnoy-Schmidt was the practice administrator and exercised authority over Plaintiff's assignments, attendance issues, accommodations, and/or other terms and conditions of employment.

7. Defendant Selwood was a lead medical assistant and was responsible for training and supervising Plaintiff.

8. Defendant Weissmann was a doctor at the practice and exercised authority over Plaintiff's work and use of the x-ray machines.

9. Defendant LaPalomento was the Colleague Relations Partner, which was equivalent to being a Human Resources director.

10. John/Jane Does 1–10 are persons or entities whose identities and roles are presently unknown and who participated in, authorized, aided, abetted, ratified, or failed to prevent the conduct alleged herein. Plaintiff will amend this Complaint when their identities are learned.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over Plaintiff's New Jersey claims and concurrent jurisdiction over Plaintiff's federal claims.

12. This Court has personal jurisdiction over each Defendant because they committed the torts and/or statutory violations alleged below within the State of New Jersey, and caused harm to Plaintiff within the State of New Jersey.

13. Venue is proper in Burlington County because Plaintiff resides in Marlton, Defendants conduct business in Marlton, and a substantial part of the events giving rise to these claims occurred in Marlton, which is located in Burlington County, New Jersey.

## FACTUAL ALLEGATIONS

14. Plaintiff worked for Regional Womens Health as a medical assistant from June 2022 until September 2, 2025.

15. Plaintiff suffers from Borderline Personality Disorder ("BPD"), a mental-health disability that substantially affects one or more major life activities and that was known to Defendants. Plaintiff provided medical support for a workplace accommodation related to that condition.

16. Because working directly with a particular physician triggered severe anxiety and exacerbated Plaintiff's condition, Plaintiff requested a reasonable accommodation that she not be assigned to work directly with that physician.

17. Defendants approved and honored that accommodation for an extended period, including approximately two years during which Plaintiff was not required to work with the physician at issue.

18. The accommodation enabled Plaintiff to perform the essential functions of her medical-assistant position and did not create an undue hardship. The Employer generally had approximately eight or nine other medical assistants available, and the work could be assigned among them.

19. In or around May 2025, Plaintiff's mother had surgery and Plaintiff needed to take time off of work to care for her mother.

20. Plaintiff had accrued sick time and paid time off ("PTO") which she used to take time off to be with her mother.

21. Subsequently, Pertnoy-Schmidt called Plaintiff into a meeting and said that Plaintiff was in danger of being terminated because of excessive absences. During that meeting, Pertnoy-Schmidt relied on absences that Plaintiff had taken to care for her mother, and which were supposed to be covered by sick leave and/or PTO.

22. Plaintiff complained to Pertnoy-Schmidt that the Employer's treatment of employee sick time, PTO, and attendance was in violation of sick-time requirements under New Jersey law.

23. Shortly thereafter, Plaintiff took twelve weeks of leave to care for her mother in connection with her mother's surgery and serious health condition. The Employer approved the leave.

24. Plaintiff's leave began on May 9, 2025 and ended on July 31, 2025.

25. In or around May 2025, close in time to Plaintiff's complaints concerning sick time and her leave for her mother, Defendants began assigning Plaintiff to the triggering physician from whom she had previously been accommodated.

26. Plaintiff complained about those assignments and about the disregard of her accommodation. Rather than restore the accommodation, Defendants continued to assign Plaintiff to the triggering physician.

27. Around that same time, LaPalomento, who was in charge of Human Resources for the Employer, told Plaintiff that in order to get her accommodation renewed she would have to engage in an interactive process which required Plaintiff to meet in the same room as the triggering physician.

28. Plaintiff's disability – BPD – deeply affects emotional regulation, interpersonal dynamics, and how the brain perceives stress, rejection, or threat. When an employer insists on a group

"interactive process" meeting, it can collide directly with the core symptoms of the diagnosis. In a room with the triggering physician, Plaintiff's nervous system would have perceived the environment as adversarial or high-threat, triggering a fight, flight, or freeze response before the conversation even began. Under this type of high-stress condition, emotional intensity can rise faster than Plaintiff's ability to process it. When overwhelmed in a face-to-face group setting, executive functioning—like organizing thoughts, articulating needs, or remaining calm—can temporarily break down. Thus, Plaintiff's therapist informed Plaintiff that it was not good for her mental health to be in the same room as the triggering physician. Plaintiff communicated all of this to LaPalomento.

29. LaPalomento nevertheless insisted that the only way the Employer could engage in an interactive process would be if Plaintiff and the triggering physician were in the same room together.

30. Moreover, Plaintiff had already received her requested accommodation for two years prior, and no meeting with the triggering physician had ever been required. There were no changes in Plaintiff's diagnosis, the Employer's business model, or any other circumstances that would cause a meeting with the triggering physician to suddenly be necessary.

31. Thus, the Employer conditioned Plaintiff's access to the accommodation process upon Plaintiff doing the very thing her disability prevented her from safely doing, despite medical notice of that limitation, and then characterized Plaintiff's disability-related inability to comply as a refusal to participate.

32. Then, on May 23, 2025, the renewal of Plaintiff's accommodation was denied. Although Plaintiff's condition and the material circumstances surrounding the accommodation had not changed, Defendants denied the accommodation, and provided no meaningful reason for the denial.

33. When Plaintiff returned to work after completing her protected family leave, Plaintiff was told in substance that Defendants would try not to assign her to the triggering physician "if we can," thereby converting a previously approved accommodation into a discretionary scheduling preference.

34. Defendants thereafter repeatedly assigned Plaintiff to work with the triggering physician despite their knowledge of her disability and the previously approved accommodation.

35. Between approximately August 1 and August 5, 2025, Plaintiff was assigned to work with the triggering physician approximately five times.

36. The repeated assignments were not caused by a sudden staffing shortage or other legitimate business need.

37. During her employment, Plaintiff had also raised concerns internally about practices she reasonably believed were unlawful, unsafe, or improper in the fertility practice, including complaints to management and Human Resources.

38. For instance, Plaintiff complained about workplace practices involving use of an x-ray machine which she believed violated law, regulation, or workplace requirements.

39. After Plaintiff's leave, Plaintiff was given a work schedule that appeared to mark her off in a manner suggesting that Defendants were preparing to terminate or remove her.

40. Defendants knew that Plaintiff was asserting rights concerning protected leave and sick time and that Plaintiff opposed practices she reasonably believed were unlawful.

41. The timing and pattern of Defendants' conduct—including the renewed assignments to the triggering physician shortly after Plaintiff's leave-related and sick-time complaints, the denial of the previously successful accommodation, and the escalation of attendance scrutiny—support an inference of discriminatory and retaliatory motive.

42. On or about September 2, 2025, Defendants again assigned Plaintiff to the triggering physician despite her accommodation history and repeated objections.

43. Faced with another assignment that Defendants knew would exacerbate her disability, and after the pattern of conduct described above, Plaintiff walked away from the assignment and the job. Defendants treated the separation as a resignation and stated that Plaintiff would be paid for approximately two additional weeks.

44. In fact, Defendants' conduct had made Plaintiff's working conditions intolerable and foreseeably forced her from employment, constituting a constructive discharge.

45. As a direct and proximate result of Defendants' conduct, Plaintiff suffered lost income, emotional distress, exacerbation of a preexisting condition, increased medication needs, therapy expenses, and other pecuniary and non-pecuniary losses.

46. At all relevant times Plaintiff satisfied the length-of-service and hours-worked requirements for the protected family leave statutes pleaded below. Specifically, Plaintiff worked at Regional Womens Health for at least 12 months prior to taking family leave, and had worked over 1,250 hours in the 12 months prior to taking family leave.

47. At all relevant times, Regional Womens Health met the applicable statutory employer-coverage requirements for the protected family leave statutes pleaded below. Specifically, Regional Womens Health had more than 50 employees working at Plaintiff's work site for each working day during 20 or more calendar workweeks in the calendar year immediately preceding the calendar year in which Plaintiff took her leave.

## CAUSES OF ACTION[1]

### COUNT 1 — NEW JERSEY LAW AGAINST DISCRIMINATION: DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE

*(Against Regional Womens Health)*

48. Plaintiff repeats and realleges each preceding paragraph as though fully set forth herein.

[1] To the extent the counts herein are contradictory or inconsistent with each other, they are pled in the alternative.

49. Plaintiff has borderline personality disorder, a disability protected by the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 et seq., and Defendants knew of her disability.

50. Plaintiff was qualified to perform the essential functions of her position with a reasonable accommodation, as demonstrated by Defendants' prior approval and successful implementation of the accommodation for an extended period.

51. Regional Womens Health failed to continue or meaningfully engage in the interactive process concerning Plaintiff's reasonable accommodation and instead denied or disregarded it without a legitimate, non-discriminatory basis.

52. At all relevant times, Plaintiff remained willing to participate in the interactive process and to provide Defendant with information reasonably necessary to evaluate her accommodation request. Plaintiff did not refuse to participate in the interactive process. Rather, Plaintiff advised Defendant that, consistent with the limitations caused by her disability and the advice of her treating therapist, she could not participate in an in-person meeting in the same room as the triggering physician because such direct exposure would trigger and exacerbate her disabling anxiety. Defendant knew of this limitation but nevertheless insisted that Plaintiff's physical presence in the same room as the triggering physician was a prerequisite to continuing the interactive process, refused or failed to pursue reasonable alternative means of obtaining the information it claimed to require, terminated the interactive process when Plaintiff could not comply with that disability-triggering condition, and then improperly blamed Plaintiff for the breakdown of the process.

53. Regional Womens Health subjected Plaintiff to adverse terms and conditions of employment because of her disability, including repeated assignments that predictably aggravated her condition, and ultimately caused or contributed to her constructive discharge.

54. The foregoing conduct violates the NJLAD, including N.J.S.A. 10:5-12(a), and applicable regulations governing reasonable accommodation.

55. As a direct and proximate result, Plaintiff sustained economic loss, emotional distress, medical and therapy expenses, and other damages recoverable under law.

**COUNT 2 — NEW JERSEY LAW AGAINST DISCRIMINATION: RETALIATION**

*(Against Regional Womens Health)*

56. Plaintiff repeats and realleges each preceding paragraph as though fully set forth herein.

57. Plaintiff engaged in activity protected by the NJLAD when she requested and sought continuation of a disability accommodation, opposed the denial and disregard of that accommodation, and complained about disability-related treatment.

58. Regional Womens Health knew of Plaintiff's protected activity and thereafter subjected her to materially adverse actions, including repeated assignments to the triggering physician, heightened attendance scrutiny, denial or non-renewal of the previously effective accommodation, and constructive discharge.

59. The temporal proximity, sequence of events, departure from the prior accommodation practice, and other circumstances indicate that there was a causal connection between Plaintiff's protected activity and the adverse actions.

60. Regional Womens Health thereby retaliated against Plaintiff in violation of N.J.S.A. 10:5-12(d).

**COUNT 3 — NEW JERSEY LAW AGAINST DISCRIMINATION:**

**AIDING AND ABETTING**

*(Against Swoyer, Diamond, Pertnoy-Schmidt, LaPalomento and John/Jane Does as Applicable)*

61. Plaintiff repeats and realleges each preceding paragraph as though fully set forth herein.

62. Swoyer, Diamond, Pertnoy-Schmidt, LaPalomento and/or other individual supervisors knowingly and substantially assisted, directed, authorized, participated in, or failed to take

reasonable steps within their authority to prevent the discriminatory and retaliatory acts alleged above.

63. Specifically, Swoyer, Diamond, and Pertnoy-Schmidt participated in preparing or implementing Plaintiff's schedule and assignments, including assignments to the physician at issue, and/or failing to override or correct those assignments while possessing the authority to do so.

64. LaPalomento, meanwhile, failed to engage in any meaningful interactive process, as described above.

65. Thus, the individual Defendants are liable for aiding and abetting violations of the NJLAD pursuant to N.J.S.A. 10:5-12(e).

**COUNT 4 — CONSCIENTIOUS EMPLOYEE PROTECTION ACT**

*(Against All Defendants)*

66. Plaintiff repeats and realleges each preceding paragraph as though fully set forth herein.

67. Plaintiff disclosed to supervisors, including all Defendants, and objected to or refused to participate in, practices she reasonably believed violated laws, rules, regulations, public policy, and/or safety requirements.

68. Specifically, Plaintiff complained to the Employer, including Swoyer, Diamond, Pertnoy-Schmidt, and LaPalomento, about Employer's failure to comply with the law's protected-leave requirements, sick-time requirements, and disability accommodation requirements.

69. Plaintiff also complained to the Employer, including Swoyer and Selwood, about the fact that Plaintiff and other co-workers who lacked the required training were being required, by Weissmann among others, to move and handle x-ray machines, in violation of the New Jersey Radiation Protection Act, N.J.S.A. 26:2D-1 et seq.; the Radiologic Technologist Act, N.J.S.A. 26:2D-25 et seq.; and the radiation-protection regulations codified at N.J.A.C. 7:28, which

regulate ionizing-radiation-producing equipment, medical diagnostic x-ray installations, authorized operation, and radiation safety.

70. Plaintiff communicated her objections and complaints to management sufficiently to place Regional Womens Health on notice that Plaintiff was objecting to conduct she believed violated the law and public-safety requirements and was not merely expressing a personal disagreement with workplace policy.

71. After Plaintiff engaged in that protected conduct, Regional Womens Health subjected Plaintiff to adverse and retaliatory treatment, including adverse scheduling, escalation of attendance scrutiny and threats, denial or disregard of her previously honored disability accommodation, repeated assignments to the physician associated with that accommodation, and working conditions that culminated in her constructive discharge.

72. Weissmann participated in the retaliatory conduct by confronting Plaintiff and intimidating her by demanding to know if Plaintiff was the one who "threw them under the bus".

73. The temporal relationship, sequence of events, departure from prior practices, and other circumstances alleged above support the inference that Plaintiff's protected objections and complaints were a determinative and/or substantial factor in the retaliatory treatment and constructive discharge.

74. Defendants' conduct violated the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 et seq., including N.J.S.A. 34:19-3.

**COUNT 5 — COMMON-LAW WRONGFUL DISCHARGE IN VIOLATION OF A CLEAR MANDATE OF PUBLIC POLICY (PIERCE CLAIM)**

*(Against All Defendants)*

75. Plaintiff repeats and realleges each preceding paragraph as though fully set forth herein.

76. New Jersey recognizes a common-law cause of action where an employee is discharged, including constructively discharged, in retaliation for conduct protected by a clear mandate of public policy. Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58 (1980).

77. Plaintiff disclosed to supervisors, including all Defendants, and objected to or refused to participate in, practices she reasonably believed violated laws, rules, regulations, public policy, and/or safety requirements.

78. Specifically, Plaintiff complained to the Employer, including Swoyer, Diamond, Pertnoy-Schmidt, and LaPalomento, about Employer's failure to comply with the law's protected-leave requirements, sick-time requirements, and disability accommodation requirements.

79. Plaintiff also complained to the Employer, including Swoyer and Selwood, about the fact that Plaintiff and other co-workers who lacked the required training were being required, by Weissmann among others, to move and handle x-ray machines, in violation of the New Jersey Radiation Protection Act, N.J.S.A. 26:2D-1 et seq.; the Radiologic Technologist Act, N.J.S.A. 26:2D-25 et seq.; and the radiation-protection regulations codified at N.J.A.C. 7:28, which regulate ionizing-radiation-producing equipment, medical diagnostic x-ray installations, authorized operation, and radiation safety.

80. Plaintiff communicated her objections and complaints to management sufficiently to place Regional Womens Health on notice that Plaintiff was objecting to conduct she believed violated the law and public-safety requirements and was not merely expressing a personal disagreement with workplace policy.

81. After Plaintiff engaged in that protected conduct, Regional Womens Health subjected Plaintiff to adverse and retaliatory treatment, including adverse scheduling, escalation of attendance scrutiny and threats, denial or disregard of her previously honored disability accommodation, repeated assignments to the physician associated with that accommodation, and working conditions that culminated in her constructive discharge.

82. Weissmann participated in the retaliatory conduct by confronting Plaintiff and intimidating her by demanding to know if Plaintiff was the one who "threw them under the bus".

83. The temporal relationship, sequence of events, departure from prior practices, and other circumstances alleged above support the inference that Plaintiff's protected objections and complaints were a determinative and/or substantial factor in the retaliatory treatment and constructive discharge.

84. Defendants thereby wrongfully constructively discharged Plaintiff in violation of a clear mandate of New Jersey public policy and are liable in tort under Pierce and its progeny for all damages legally recoverable, including compensatory and, where permitted, punitive damages.

85. This Count is pleaded in the alternative to Plaintiff's CEPA claim. Plaintiff does not seek duplicative recovery and reserves the right to make any election of remedies required by N.J.S.A. 34:19-8 at the procedurally appropriate time.

**COUNT 6 — FEDERAL FAMILY AND MEDICAL LEAVE ACT: INTERFERENCE**

*(Against Regional Womens Health)*

86. Plaintiff repeats and realleges each preceding paragraph as though fully set forth herein.

87. The Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), entitles eligible employees working for covered employers to take up to 12 weeks of leave to care for a family member who has a serious health condition.

88. Plaintiff was an eligible employee, Regional Womens Health was a covered employer, Plaintiff's mother had a serious health condition, and Plaintiff was therefore entitled to FMLA leave to care for her mother.

89. Plaintiff requested and took approximately twelve weeks of approved leave for that purpose and provided such notice and documentation to Regional Womens Health as required.

90. Regional Womens Health interfered with, restrained, discouraged, or denied Plaintiff's exercise of FMLA rights by threatening termination or attendance consequences for protected absences,

treating protected time as attendance occurrences, and/or failing to restore Plaintiff to the same or an equivalent position and terms free from penalty for taking protected leave.

91. The conduct alleged above violated 29 U.S.C. § 2615(a)(1) and caused Plaintiff compensable loss.

**COUNT 7 — FEDERAL FAMILY AND MEDICAL LEAVE ACT: RETALIATION**

*(Against Regional Womens Health)*

92. Plaintiff repeats and realleges each preceding paragraph as though fully set forth herein.

93. Plaintiff engaged in protected activity by requesting and taking FMLA leave and by opposing conduct she believed interfered with protected leave rights.

94. Regional Womens Health knew of that activity and thereafter took materially adverse action against Plaintiff, including heightened attendance scrutiny, threats regarding absences, renewed assignments to the physician associated with her disability accommodation, denial or disregard of that accommodation, and constructive discharge.

95. The temporal proximity and pattern of conduct support a causal connection between Plaintiff's protected FMLA activity and the adverse actions.

96. Regional Womens Health thereby violated 29 U.S.C. § 2615(a)(2) and other applicable provisions of the FMLA.

**COUNT 8 — NEW JERSEY FAMILY LEAVE ACT: INTERFERENCE**

*(Against Regional Womens Health)*

97. Plaintiff repeats and realleges each preceding paragraph as though fully set forth herein.

98. Plaintiff and Regional Womens Health satisfied the coverage and eligibility requirements applicable to Plaintiff's 2025 leave under the New Jersey Family Leave Act ("NJFLA"), N.J.S.A. 34:11B-1 et seq.

99. Plaintiff invoked and exercised rights protected by the NJFLA by requesting and taking family leave to care for her mother in connection with her mother's serious health condition and surgery.

100. Regional Womens Health interfered with, restrained, denied, discouraged, and/or withheld benefits associated with Plaintiff's exercise of NJFLA rights by threatening termination or attendance consequences for protected absences, treating protected leave adversely, and/or failing to return Plaintiff to employment free from penalty for exercising protected family-leave rights.

101. By interfering with, restraining, denying, and/or withholding benefits associated with Plaintiff's exercise or attempted exercise of NJFLA rights, Regional Womens Health violated N.J.S.A. 34:11B-9(a) and caused Plaintiff compensable harm.

**COUNT 9 — NEW JERSEY FAMILY LEAVE ACT: RETALIATION**

*(Against Regional Womens Health)*

102. Plaintiff repeats and realleges each preceding paragraph as though fully set forth herein.

103. Plaintiff engaged in activity protected by the NJFLA by requesting and taking family leave, asserting her rights to such leave and its attendant protections, and opposing practices she reasonably believed infringed those rights.

104. Regional Womens Health knew of Plaintiff's protected activity and thereafter subjected her to adverse employment actions, including heightened attendance scrutiny, threats concerning absences, renewed assignments to the physician associated with her disability accommodation, denial or disregard of that accommodation, and constructive discharge.

105. The close temporal proximity and pattern of conduct alleged above support a causal connection between Plaintiff's exercise of NJFLA rights and the adverse employment actions taken against her.

106. Regional Womens Health thereby constructively discharged, discriminated against, and/or retaliated against Plaintiff because she exercised and opposed interference with rights protected by the NJFLA, in violation of N.J.S.A. 34:11B-9(b), causing Plaintiff compensable harm.

**COUNT 10 — NEW JERSEY EARNED SICK LEAVE LAW: INTERFERENCE/DENIAL OF EARNED SICK LEAVE RIGHTS**

*(Against Regional Womens Health)*

107. Plaintiff repeats and realleges each preceding paragraph as though fully set forth herein.

108. The sick time and absences at issue constituted accrued earned sick leave protected by the New Jersey Earned Sick Leave Law ("NJESLL"), N.J.S.A. 34:11D-1 et seq. Plaintiff was entitled to request and use such leave for purposes authorized by N.J.S.A. 34:11D-3, including qualifying care for herself and/or a family member.

109. Plaintiff requested, attempted to use, and/or used earned sick leave for statutorily protected purposes and provided notice as required under the circumstances.

110. Regional Womens Health interfered with and/or denied Plaintiff's earned sick leave rights by failing or refusing to make protected earned sick leave available, failing to recognize qualifying absences as protected earned sick leave, discouraging Plaintiff from using such leave through threats of termination or attendance consequences, and/or otherwise failing to provide the benefits required by the NJESLL.

111. Such conduct constitutes a failure to make available or otherwise provide earned sick leave as required by N.J.S.A. 34:11D-3 and a violation remediable under N.J.S.A. 34:11D-5 and the incorporated provisions of the New Jersey State Wage and Hour Law.

**COUNT 11 — NEW JERSEY EARNED SICK LEAVE LAW: RETALIATION**

*(Against Regional Womens Health)*

112. Plaintiff repeats and realleges each preceding paragraph as though fully set forth herein.

113. Plaintiff engaged in activity protected by the NJESLL by requesting and/or using earned sick leave and by complaining about, opposing, and informing others of practices she reasonably and in good faith believed violated her earned sick leave rights.

114. Regional Womens Health knew of Plaintiff's protected activity and threatened or imposed attendance consequences and other adverse employment actions because Plaintiff requested, used, or complained about protected earned sick leave, including treating protected sick-leave absences as occurrences or absences that could subject her to discipline or termination.

115. The close temporal proximity alleged above—including adverse treatment within the same general period as Plaintiff's sick-leave complaints—supports a causal connection and, to the extent the adverse action occurred within 90 days of conduct identified in N.J.S.A. 34:11D-4(b), gives rise to the statutory rebuttable presumption of retaliation.

116. Regional Womens Health thereby retaliated and discriminated against Plaintiff in violation of N.J.S.A. 34:11D-4, entitling Plaintiff to the remedies incorporated through N.J.S.A. 34:11D-4(d) and 34:11D-5, including appropriate damages and other relief available under the New Jersey State Wage and Hour Law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Rebecca Dragone demands judgment against Defendants, jointly and severally, where permitted by law, and seeks:

A. Compensatory damages for past and future lost wages, lost benefits, and diminished earning capacity;

B. Back pay, front pay, and/or reinstatement as appropriate;

C. Damages for emotional distress, humiliation, pain and suffering, medical expenses, therapy expenses, and other consequential losses;

D. Liquidated damages, statutory damages, civil penalties, and other enhanced damages available under the FMLA, NJFLA, Earned Sick Leave Law, CEPA, or other applicable law;

E. Punitive damages to the extent permitted by law;

F. Pre-judgment and post-judgment interest;

G. Reasonable attorneys' fees and costs of suit pursuant to the applicable fee-shifting statutes;

H. Equitable and injunctive relief as appropriate; and

I. Such other and further relief as the Court deems just and equitable.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**DESIGNATION OF TRIAL COUNSEL**

Pursuant to Rule 4:25-4, Paul S. Grosswald is hereby designated as trial counsel for Plaintiff.

**CERTIFICATION PURSUANT TO RULE 4:5-1**

Pursuant to Rule 4:5-1(b)(2), undersigned counsel certifies that, to counsel's present knowledge and subject to supplementation, the matter in controversy is not the subject of any other action pending in any court or arbitration proceeding, and no other action or arbitration proceeding is contemplated. Counsel is not presently aware of any non-party who should be joined pursuant to Rule 4:28 or who is subject to joinder pursuant to Rule 4:29-1(b) because of potential liability on the basis of the same transactional facts.

Dated: September 1, 2026

**PAUL S. GROSSWALD, ESQ., LLC**

Paul Grosswald

PAUL S. GROSSWALD
98 W. End Avenue
Summit, NJ 07901
Phone: (718) 694-9442
Email: pgrosswald@hotmail.com
*Attorneys for Plaintiff Rebecca Dragone*